# UNITED STATES DISTRICT COURT

SOUTHERN District of NEW YORK

STUART KERESTAN

Plaintiff(s),

- against -

MERCK & CO. LONG TERM DISABILITY PLAN and MERCK & CO.,

Defendant(s).

**SUMMONS IN A CIVIL CASE**

Civil Action No. JUDGE JONES

**05 CV 3469**

TO: (name and address of defendants)

SEE ATTACHED SHEET

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

BINDER & BINDER, P.C.
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York 11779

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON
CLERK

(BY) DEPUTY CLERK

APR 04 2005
DATE



NAMES AND ADDRESSES OF DEFENDANTS:

MERCK & CO. LONG TERM DISABILITY
c/o Senior Director HR Services
CR-HR Merck & Co., Inc.
One Merck Drive
P.O. Box 100
Whitehouse Station, New Jersey 08889-0100            Hunterdon County

MERCK & CO.
c/o Senior Director HR Services
CR-HR Merck & Co., Inc.
One Merck Drive
P.O. Box 100
Whitehouse Station, New Jersey 08889-0100            Hunterdon County

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STUART KERESTAN,

                                             Plaintiff,                  **Civil**
                                                                                 **Action No.**

- against -

                                                                                 **COMPLAINT**

**MERCK & CO. LONG TERM DISABILITY PLAN and
MERCK & CO.,**

                                            Defendants.
-------------------------------------------------------------------X

        Stuart Kerestan, by his attorneys, BINDER & BINDER, P.C., for his Complaint against the Defendants, Merck & Co. Long Term Disability Plan (the "LTD Plan") and Merck & Co. (the "Plan Administrator"), alleges as follows:

### JURISDICTION AND VENUE

        1.      Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

        2.      Under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"), the long term disability plan at issue in this litigation must contain provisions for the administrative or internal appeal of a denial of benefits. Plaintiff has exhausted all administrative avenues of appeal, and has received a final denial.

1

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), which allows an action under Title I of ERISA to be brought in the district where the long term disability plan is administered, where the breach took place, or where a defendant resides or may be found.

## NATURE OF ACTION

4. This action seeks a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee welfare benefit plan. The LTD Plan provides group long term disability benefits through Merck & Co. ("Merck"), Plaintiff's employer.

5. Because the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, ERISA applies to this action. Said benefits were effective at all times relevant herein.

6. Merck, which is both the Plan Sponsor and Plan Administrator, has discretionary authority. Merck is also the agent for service of process at Senior Director HR Services, CR-HR, Merck & Co., Inc., One Merck Drive, P.O. Box 100, Whitehouse Station, NJ 08889-0100.

7. There is no delegation of discretionary authority from Merck to the Insurance Company. The Insurance Company, as the Claims Administrator, determines eligibility for benefits for Plan participants. Because the Insurance Company lacks discretionary authority, its benefits determinations are subject to de novo review.

2

## THE PARTIES

8.  Plaintiff was born on January 24, 1947, and is a resident of New Jersey.

9.  Defendant, the LTD Plan, is an employee benefit welfare plan as defined by ERISA, and its terms and benefits are the subject matter of this action. The LTD Plan is sponsored by Plaintiff's employer, Merck.

10. Defendant, the Plan Administrator, is a business incorporated under the laws of New Jersey.

## STATEMENT OF FACTS

### The LTD Plan

11. At all relevant times, Plaintiff, together with other regular employees of Merck was covered as a participant under the LTD Plan. The LTD Plan provides for payment of monthly income benefits to participants of the LTD Plan who become disabled. The monthly benefit is based on a set percentage of pre-disability eligible compensation, and is reduced by other income benefits as these terms are identified in the LTD Plan. The maximum benefit period under the LTD Plan is to age 65.

12. According to the LTD Plan: "'Total disability' means being unable to perform all material aspects of your occupation during the eligibility period and during the first 24 consecutive months that benefits are paid under this plan. After that, in order to continue to receiving LTD benefits, you must be unable to engage in any gainful employment for which you are or may become reasonably qualified by education, training or experience."

3

**Vocational Background**

13.   Plaintiff was born January 24, 1947, and is currently 58 years old.

14.   Plaintiff worked for Merck from July 17, 2000 through July 15, 2002 as a Senior Medical Writer.

15.   Plaintiff was earning $78,000 annually when he had to stop working on July 15, 2002 due to bipolar disorder and depression.

16.   According to the Dictionary of Occupational Titles (the "DOT"), Plaintiff's former job most closely resembles that of a technical publications writer 131.267-026, which is a sedentary job. Plaintiff's work tasks included: (a) developing, writing, and editing material for reports, manuals, briefs, proposals, instruction books, catalogs, and related technical and administrative publications concerned with work methods and procedures; (b) observing production, developmental, and experimental activities to determine operating procedure and detail; (c) interviewing medical and scientific personnel and reading journals, reports, and other material to become familiar with product technologies and production methods; (d) reviewing manufacturer's and trade catalogs, drawings and other data relative to pharmaceuticals; (e) organizing material and completing writing assignment according to set standards regarding order, clarity, conciseness, style, and terminology; (f) reviewing published materials and recommending revisions or changes; (g) maintaining records and files of work and revisions; (h) selecting photographs, drawings, sketches, diagrams, and charts to illustrate material; and (i) assisting in laying out material for publication.

4

17. Plaintiff's former work also required him to deal with interpersonal relationships two thirds of the day and stressful situations one third of the day. Plaintiff's supervisor, Dr. Laurence Hirsch, Vice President of Medical Communications, informed the Insurance Company that Plaintiff's job duties and responsibilities could not be accommodated.

18. Plaintiff timely applied for disability benefits.

**The Administrative Review**

19. In a letter dated October 10, 2002, at the same time that it was first providing Plaintiff with claim forms, the Insurance Company threatened to deny Plaintiff's application if it was not submitted by November 18, 2002. The Insurance Company copied Merck on the letter.

20. Plaintiff's application provides that he began treatment for bipolar disorder and depression around 1980, and these conditions had gotten so severe in 1997 that he was hospitalized for them. The application further provided that Plaintiff had stopped working because he was unable to concentrate, focus and think.

21. William Lukachko has been Plaintiff's treating psychiatrist for 25 years, and still treats Plaintiff every 2 to 3 weeks for bipolar disorder and depression.

22. The medications that Dr. Luchacko prescribes for Plaintiff include: Depakote (manic depression), Clonazepam (panic disorder), Risperdal (psychosis), Wellbutrin (major depression), Zyprexa (schizophrenia), Celexa (major depression), Effexor (depression) and Ativan (anxiety and insomnia). The more common side effects of the above medications include: drowsiness,

5

amnesia, abnormal thinking, agitation, anxiety sedation, dizziness, disorientation, stomach pain and upset, weakness, vision problems, fatigue, headache, nasal inflammation, tremor and constipation

23. Dr. Luchacko completed his first Attending Physician's ("AP") Statement on November 1, 2002. In it, Dr. Luchacko states Plaintiff should not work as of July 10, 2002 due to his bipolar disorder and depression. Dr. Luchacko also assessed Plaintiff with class 5 severe functioning, which completely precludes working any amount of time in a day.

24. On December 10, 2002, the Insurance Company requested treatment records and a functional assessment from Dr. Lukachko.

25. On December 26, 2002, Dr. Lukachko concluded that Plaintiff's Global Assessment of Function ("GAF") was 45;[1] that Plaintiff became disabled from work on July 10, 2002 because he could not concentrate and lacked motivation; and Plaintiff could not do the same type of work elsewhere. Dr. Lukachko further concluded that Plaintiff was significantly or totally unable to perform most work duties, including complex tasks that require higher levels of reasoning or language skills.

26. After receiving Dr. Lukachko's conclusions, on February 10, 2003, the Insurance Company approved Plaintiff's long term disability benefits as of January 14, 2003, after Plaintiff exhausted his 26 weeks of Short Term Disability coverage.

---

[1] By definition, a GAF score of 41-50 indicates "serious symptoms," or any serious impairment in occupational functioning. The DSM-IV provides that an example of a GAF score of 41-50 is the inability to work.

27. On February 20, 2003, the Insurance Company warned Plaintiff that his LTD benefits would be reduced if he failed to apply for Social Security disability benefits.

28. On April 6, 2003, the Social Security Administration found that Plaintiff was unable to perform his past work and was totally disabled from any other type of work as well, as of July 10, 2002.

29. On June 9, 2003, the Insurance Company demanded $5,256.00 for reimbursement of an overpayment caused by the award of retroactive Social Security disability benefits. After the monthly Social Security disability benefit offset, the LTD monthly benefit was reduced to $2,798.

30. By letter dated August 21, 2003, the Insurance Company asked Plaintiff for updated medical records. Merck was copied on the letter.

31. On September 23, 2003, Dr. Lukachko supplied updated notes and a supplemental functional assessment. The notes stated that Plaintiff had to give up his home and move in with his mother, and was depressed because he was not working and envied those who could. Plaintiff's current GAF was 48, and 50 was the highest GAF score during the last year. Dr. Luchacko identified the reasons why Plaintiff could not work, and estimated that it would be at least another 6-12 months before Plaintiff could return to work with accommodations.

32. On April 2, 2004, the Insurance Company asked for updated medical records again, and a third functional assessment.

33. On April 12, 2004, Dr. Lukachko stated Plaintiff's condition had not changed since his September 2003 assessment, but the prognosis for

recovery had gotten worse. Dr. Lukachko estimated that it would be at least another 12 months before Plaintiff could return to work with accommodations.

**Benefit Termination**

34. By letter dated June 17, 2004, the Insurance Company terminated Plaintiff's LTD benefits based solely upon Dr. Lukachko's notes from October 2003 through March 2004 and his April 12, 2004 AP Statement. Once again, Merck was copied on the letter.

35. In terminating Plaintiff's benefits, the Insurance Company failed to identify any evidence to support its conclusory contention that Plaintiff's medical documentation did not support total disability.

36. In terminating Plaintiff's benefits, the Insurance Company failed to identify any evidence which revealed that Plaintiff's bi-polar disorder or depression had improved.

37. The only reason that the Insurance Company gave for the termination was that there were no instances of concentration difficulties or functional impairments in Dr. Luchacko's notes, despite the fact that Dr. Luchacko explicitly advised the carrier that Plaintiff could not concentrate.

38. The Insurance Company disregarded the fact that after Plaintiff stopped working, there were no occupational tasks requiring his concentration.

39. If the absence of instances of concentration difficulties or functional impairments in Dr. Luchacko's notes was actually significant, then the Insurance Company would not have approved and continued Plaintiff's benefits previously. In other words, when it approved LTD benefits, the Insurance

8

Company did not identify instances where Plaintiff's concentration difficulties and functional impairments that were contained in Dr. Luchacko's notes.

**The Appeal**

40. On July 12, 2004, Plaintiff appealed.

41. On appeal, Plaintiff submitted a note dated July 7, 2004 from Dr. Luchacko stating that Plaintiff's depression had gotten worse. Dr. Luchacko reiterated that Plaintiff could not return to work, which requires good concentration and motivation, and could not see how anyone would hire Plaintiff in his present condition.

42. On August 25, 2004, the Insurance Company asked Ian Lipsitch, a psychiatrist, to review Plaintiff's file. Dr. Lipsitch solicits work by listing himself as a medical expert with companies such as the NASJVP Expert Witness Directory.

43. Dr. Lipsitch did not perform a complete review of the file, but rather, only reviewed Dr. Luchacko's notes and assessments and the Insurance Company's Diary Notes. Dr. Lipsitch did not even make a telephone call to obtain information from Plaintiff or Dr. Luchacko.

44. Dr. Lipsitch never examined, met or even spoke with Plaintiff.

45. The Insurance Company upheld the termination by rubber stamping Dr. Lipsitch's conclusion that the medical records supposedly did "not contain objective data" precluding work after June 18, 2004.

46. The Plan does not require "objective" data to support disability.

9

47. It is arbitrary and capricious to require "objective" evidence where the Plan does not contain such a requirement.

48. It was arbitrary and capricious for the Insurance Company to terminate Plaintiff's claim for lack of "objective" evidence when it was unable to identify what other "objective" evidence that Plaintiff could have submitted, in addition to Dr. Luchacko's observations, to support his claim that his loss of concentration was sufficiently severe to prevent him from engaging in gainful work.

49. The Insurance Company specifically asked Dr. Lipsitch to identify what medical evidence Plaintiff was lacking, but he failed to provide that answer.

50. Dr. Lipsitch also failed to identify any facts to support his biased and erroneous vocational conclusions regarding Plaintiff. For example, Dr. Lipsitch said that because Plaintiff could write an LTD appeal, he could work. However, Dr. Lipsitch did not know how long it took Plaintiff to write the appeal, if Plaintiff had help writing the appeal, or how many breaks Plaintiff took to write the appeal.

51. The fact that Dr. Lipsitch is incapable of comprehending the difference between Plaintiff's occupation, which requires more than just writing, on highly complex and technical subjects, with his appeal letter, reveals (a) the uselessness of his conclusions, and (b) his conflict of interest bias.

52. The Insurance Company's selective reliance on Dr. Lipsitch's conclusion was unreasonable.

53. It was unreasonable, arbitrary and capricious for the Insurance Company to disregard the overwhelming evidence of Dr. Luchacko ,

10

who has treated Plaintiff for over twenty five years, and who concluded that Plaintiff was totally disabled and unable to work.

54. It was unreasonable, arbitrary and capricious for the Insurance Company to disregard without explanation the conclusion of the Social Security Administration, which concluded that Plaintiff was totally disabled and not only unable to perform his past work, but also any other type of work for which he had transferrable skills.

## PLAINTIFF'S CAUSE OF ACTION FOR LONG TERM DISABILITY BENEFITS

55. Plaintiff incorporates each and every allegation contained in paragraphs "1" through "54" herein as if fully restated herein.

56. Fiduciaries are statutorily obligated to perform their duties prudently, solely in the interest of plan participants and beneficiaries, and strictly in conformance with the provisions of the Policy. Fiduciaries also have a statutory obligation to interpret and construe the terms of the plan fairly, and make decisions in accordance with plan language.

57. Because the Insurance Company markets itself as being able to minimize disability costs as a third party claims administrator, it has a pecuniary interest in denying claims, and it made the disability claim decisions.

58. Merck did not delegate discretionary authority to the Insurance Company.

59. The Insurance Company's decisions were not supported by the medical or vocational evidence, did not apply the language of the LTD Plan, and were tainted by pecuniary self interest.

11

60. The Insurance Company evaluated the Plaintiff's claim under standards that were more stringent than those provided for in the LTD Plan documents by adding terms and conditions that were not contained in the LTD Plan. The LTD Plan does not provide that benefits can be denied based on a purported lack of "objective" evidence.

61. Plaintiff was and remains disabled within the terms and conditions of the LTD Plan; therefore, Plaintiff is entitled receive monthly LTD benefits from on or about June 17, 2004, to the present.

### PLAINTIFF'S CAUSE OF ACTION
### FOR BREACH OF FIDUCIARY DUTIES

62. Plaintiff repeats each and every allegation contained in paragraphs "1" through "61" as if fully set forth herein.

63. The Plan Administrator breached its fiduciary duties in allowing the Insurance Company to render all decisions on Plaintiff's claim for benefits, despite its conflict of interest and biased handling of this claim.

64. The Plan Administrator has breached its fiduciary duties in failing to monitor the actions of the Insurance Company properly and in failing to correct the biased, unfair and inequitable handling of Plaintiff's claim.

65. Moreover, "[E]mployers have a duty to select insurers for their employees with care, and to avoid hiring insurers with reputations for shoddy and hostile claim administration ..." Radford Tust v. First Unum Life Ins. Co., 321 F. Supp. 2d 226, (D. Mass 2004). The Plan Administrator has breached this fiduciary duty.

66. The Insurance Company breached its fiduciary duties in failing to render a fair and impartial decision on Plaintiff's claim for benefits under the LTD Plan; by rendering its adverse decisions in favor of its own financial self interest; in failing to give any consideration to the prior determinations of disability on the LTD claim and Plaintiff's Social Security claim; in failing to give proper weight to the opinions of Plaintiff's treating physician; and in failing to conduct an independent medical examination.

67. Moreover, the Insurance Company's termination decision is further evidence of its breach of its fiduciary duties because all of the reliable medical evidence submitted on this claim mandates a finding of "total disability."

68. Plaintiff is entitled to equitable relief against the Insurance Company and the Plan Administrator as a consequence of their knowing and intentional breach of their respective fiduciary duties, in the form of (a) a permanent injunction prohibiting them from repeating the bad faith conduct, which led to the wrongful termination of Plaintiff's claim, in the handling of future claims of other claimants, and (b) an Order requiring the Plan Administrator to replace the Insurance Company as the LTD Plan's Claims Administrator, and precluding the substituted Claims Administrator from requiring standards of proof in excess of that called for in the LTD Plan.

## DEMAND FOR TRIAL BY JURY

69. Plaintiff demands a trial by jury of all issues triable as of right.

**WHEREFORE,** Plaintiff respectfully requests the Court to:

A.  Declare and determine that under the terms of the LTD Plan that Plaintiff's disability has continued from June 17, 2004 to the present date;

B.  Order Defendants to compensate Plaintiff for his disability in accordance with the terms of the LTD Plan;

C.  Declare and determine that the Plan Administrator breached its fiduciary;

D.  Order the Plan Administrator to select a new Claims Administrator;

E.  Issue an Order precluding the substituted Claims Administrator from requiring standards of proof in excess of that called for in the LTD Plan;

F.  Award Plaintiff his attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

G.  Grant Plaintiff such other necessary and proper relief, including interest, costs and disbursements, as to which he may be entitled.


Dated:  Ronkonkoma, NY
        March 10 , 2005

                                BINDER & BINDER P.C.

                                By: /s/ Harry P Binder
                                Harry J. Binder (HJB 5450)
                                Attorneys for Plaintiff
                                2805 Veterans Memorial Hwy.
                                Suite 17
                                Ronkonkoma, NY 11779
                                (631) 648-4700

14